LAND, J.
The plaintiffs, as heirs of Mrs. Alphonse Landry, sued the defendants foils,977.36 damages, on allegations of fact substantially as follows:
Mrs. Alphonse Landry, Gabriel Landry, and others had a contract for the sale of cane for the years 1911-15, with the Burguieres Company, which provided that said cane should be shipped to any sugar factory owned or controlled by said company to be designated by it; and the company directed deliveries to be made to the Segura Sugar Company.
The contract further provided that in case of increased acreage the delivery of cane should be increased, “if seen necessary” by Mrs. Landry to save her crop during the time specified in said contract.
Acting on the faith of this contract, entered into on November 5, 1910, Mrs. Landry increased her cane acreage, and raised 5,025 tons of cane, of which she lost 2,795 tons.
Under the terms of the contract Mrs. Landry had a right to demand that the defendants accept the delivery of 55.2 tons per day, so as to enable her to save her whole crop between October 16, 1911, when the Segura Sugar Company began operating, and January 15, 1912, when the season wound up. That, instead of furnishing Mrs. Landry with the facilities to ship said tonnage of cane per day, defendants almost every day furnished cars for only half a day’s hauling, after which Mrs. Landry’s teams were idle, and the drivers and cane loaders had to be chang-. ed in their work, or otherwise employed or laid Off.
Mrs. Landry, notwithstanding repeated requests and urgent demands that her contract be respected by the defendants, and sufficient cars be furnished her, were ignored by them, was enabled to save between October 16,1911, and November 13, 1911, only 764 tons of cane, while, had the defendants lived up to their contract, she would have saved 1,490 tons of cane, which laches and neglect consequently caused her to suffer a loss of 724 tons of cane, of the value of $3,922.56.
Plaintiffs also sued for $54.80, balance due her for cane delivered for the week December 4r- 9, 1911.
Defendants filed a number of exceptions, which were all overruled.
The Burguieres Company, after pleading the general issue, admitted the execution of the contract sued on, but averred that the terms and conditions of the same were subsequently changed by a verbal agreement so as to fix the number of cars to be furnished daily at eight for the common use of Mrs. Landry and her coparties to the contract, and further averred that the Segura Sugar Company had furnished all the cars provided by said agreement.
Further answering, the respondent denied that the sum of $54 was due as alleged, but averred that the same was a legitimate reduction of price on account of the frozen condition of the cane delivered during the week referred to in the petition.
The Segura Sugar Company answered, denying that it was a party to the contract sued on, and, in the alternative, adopting the answer of the Burguieres Company.
There was judgment for the defendants, and the plaintiffs have appealed.
According to the original contract, the Landrys agreed to sell all the cane grown on their lands to the Burguieres Company during the seasons of 1911-15. The sellers bound *905 themselves to load on board cars all said cane, sound in every respect, clear of trash, and cut to the entire satisfaction of the purchaser. The price was $1 per ton of 2,000 pounds for each cent that prime yellow clarified sugar should sell for in the New Orleans market during the week of delivery. Delivery of the cane was to be considered as made when weighed on the Independent switch scale and bill of lading signed by the conductor of the cane train.
The contract contained the following stipulations:
“It is mutually agreed that the daily delivery of said cane shall not exceed a certain number of tons nor be less than a certain other number of tons, which said number of tons shall be determined by the parties of the first part, but which shall be proportionate to the total tonnage of cane to be received during the twenty-four hours from all sources at the Segura Operating Company, all conditions and weather permitting.”
“Parties of the first part bind and obligate themselves to furnish to the parties of the second part cars to take not less than 150 tons per day, and in case of increased acreage the daily delivery to be increased proportionately if seen necessary by said parties of the second part to save their crops during said specified time.”
The preponderance of the testimony shows that the foregoing stipulation as to cars and tonnage was superseded by a verbal agreement that the company should furnish eight cars per day. The allegations of the petition do not meet this phase of the case, but plaintiffs 'introduced testimony to show that the number of cars furnished was insufficient.
While this may be true to a certain extent, it appears from the records of the Segura Sugar Company and the testimony of its bookkeeper that between October 20 and November 13, 1911, before the cane was frozen, Mrs. Landry and her tenants hauled cane to the switch on 17 out of 21 working days, and during that time delivered only 842 tons of cane, while their joint capacity was 1,688 tons; in fact the petition alleges a joint capacity of 1,490 tons and the delivery of 766 tons of cane.
The evidence tends to show that the loss complained of, if avoidable, was the consequence of the delay of the Landrys in cutting and hauling the cane to the switch prior to the freezes of November 13 and 29, 1911. They had no right to assume in advance that cane tendered at the switch would not be accepted and transported by the defendant company. They should have tested the matter by tendering delivery, but, as it was, they accepted the situation and went on delivering cane at the switch after November 13, 1911. Other parties, with some trouble and delay, procured sufficient cars to carry their cane, while the Landrys, not anticipating'a freeze, did not exert themselves to make early deliveries, as the cane was very green for the time of year. The defendant furnished the eight cars as stipulated, and the most that can be said, on the evidence, is that at times there were delays in their operation.
We do not think that the plaintiffs have made jOut their case by the preponderance of the evidence dn either of their claims. The evidence is voluminous and conflicting, and the judgment of the trial judge in such a case is entitled to weight.
Judgment affirmed.
PROVOSTY, J., takes no part.